Kimberly M. Donaldson (KD 3893)
Joseph G. Sauder (JS 5756)
Benjamin F. Johns (BJ 9832)
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500

*Additional Counsel Listed on Signature Page*

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **KAREN PIRCHES** and **DINITRISE HICKS** on behalf of themselves and all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | **Case No.** |
| v. | : : | |
| **MENU FOODS INCOME FUND,** a foreign corporation; **MENU FOODS MIDWEST CORPORATION,** a Delaware corporation; **MENU FOODS SOUTH DAKOTA, INC.,** a Delaware corporation; **MENU FOODS HOLDINGS, INC.,** a Delaware corporation; **MENU FOODS, INC.,** a New Jersey corporation; **MENU FOODS LIMITED,** a foreign corporation; and Does 1 Through 100, | : : : : : : : : : : : : : : : | **CLASS ACTION COMPLAINT** |
| Defendants. | : : | **JURY TRIAL DEMANDED** |

Dockets.Justia.com

Plaintiff Karen Pirches ("Pirches"), residing at 716 East Lincoln Highway in Coatesville, Pennsylvania, and Plaintiff Dinitrise Hicks ("Hicks") residing at 600 Grant Road, Apartment 22 in Folcroft, Pennsylvania (collectively, "Plaintiffs") by and through their attorneys, individually and on behalf of all others similarly situated, allege as follows upon personal knowledge as to themselves, and as to all other matters upon information and belief, and based upon the investigation undertaken by Plaintiffs' counsel, which included, *inter alia*, review and analysis of Defendants' websites, press releases, news articles, and pleadings filed in other suits:

## DEFINITIONS

1.      As used herein, the phrase "Defective Pet Food Products" shall refer to any of the animal food products (including any ingredients therein) manufactured, produced, assembled, distributed and/or sold by any of the Defendants, and that has been, is, or will be subject to any voluntary or involuntary recall.

## NATURE OF THE CASE

2.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and all others similarly situated who purchased any of the Defective Pet Food Products.  The Defendants are Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota, Inc., Menu Foods Holdings, Inc., Menu Foods, Inc., and Menu Foods Limited (collectively, unless stated otherwise, the "Menu Foods Defendants" or "Defendants").

3.      The Menu Foods Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and other private label brands.  The Menu Foods Defendants' pet food products are sold at large retail stores throughout the United States.

4.      On March 16, 2007, the Menu Food Defendants issued a press release announcing a recall of 60 million cans of contaminated dog and cat food that was manufactured between December 3, 2006 and March 6, 2007.  The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of the Menu Foods Defendants' domestic manufacturing facilities located in New Jersey and Kansas.

5.      The Defective Pet Food Products that Plaintiffs and Class members purchased and fed to their pets caused their pets to become ill through kidney disease and renal failure, which required veterinarians visits, medications, hospitalizations and, tragically in some cases, burials of those pets that died.  The surviving pets that consumed the Defective Pet Food Products now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys and other organs.

6.      The Menu Foods Defendants' belated recall of their Defective Pet Food Products was commenced *several weeks* after the Menu Foods Defendants first began receiving complaints about their products.  This recall has since been extended to pet food that was manufactured by the Menu Foods Defendants as early as November 8, 2006.

7.    Defendants' actions in selling the Defective Pet Food Products and failing to issue the recall sooner were negligent, reckless and in breach its statutory and common law duties, and express and implied warranties to its customers.

8.    Those actions were a proximate cause of injury to and the deaths of numerous cats and dogs.

9.    Plaintiffs here seek damages, injunctive relief, attorneys' fees, and costs against Defendants.

## JURISDICTION AND VENUE

10.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332(d)(2) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has over supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this Judicial District.  Defendants transacted business in this Judicial District, and the conduct complained of herein occurred in this district, as well as elsewhere in New Jersey.

## THE PARTIES

### The Plaintiffs

12.     Plaintiff Karen Pirches was the loving companion of a black and white domestic shorthair feline named "Baby."  Baby was an indoor cat that had never been ill before eating one or more of Defendants' Defective Pet Food Products, which was purchased by Plaintiff.  In or around December of 2006, after eating one or more of Defendants' Defective Pet Food Products, Baby began losing weight, became lethargic, and was unresponsive.  On the early morning of January 6, 2007, Baby went listless and died.  Plaintiff incurred significant monetary and non-monetary damages as a result of the Defendants' conduct complained of herein.

13.     Plaintiff Dinitrise Hicks is the loving companion of a domestic feline named "Coco." Coco was an indoor kitten that had never been ill before eating one or more of Defendants' Defective Pet Food Products, which was purchased by Plaintiff Hicks.  In or around March of 2007, after eating Save A Lot Special Mix Blend Products, Coco became lethargic and was unresponsive.  Coco was subsequently diagnosed with kidney failure.  Plaintiff Hicks has incurred significant monetary damages in excess of $500 in veterinarian bills and non-monetary damages as a result of the Defendants' conduct complained of herein.  On March 23, 2007, Plaintiff Hicks contacted Defendants to submit a claim pursuant to their recall policy.  Plaintiff Hicks provided her information and was informed that she would receive a return call within 72 hours.  Defendants have failed to return Plaintiff Hicks's call or process her claim.

## The Defendants

14.    Defendant Menu Foods Income Fund is an unincorporated company with its principal place of business at 8 Falconer Drive, Streetsville, Ontario, L5N 1B1, Canada.  Menu Foods Income Fund controls, directly or indirectly, the other Menu Foods Defendants engaged in the manufacture and distribution of the Defective Pet Food Products.  Menu Foods Income Fund has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit.

15.    Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal place of business at P.O. Box 1046, 1400 E. Logan Ave., Emporia, Kansas, 66801.  Upon information and belief, Menu Foods Midwest Corporation is an affiliate or subsidiary of, and is wholly owned and controlled by Defendant Menu Foods Income Fund.

16.    Defendant Menu Foods South Dakota, Inc. is a Delaware corporation, and upon information and belief, an affiliate or subsidiary of, and wholly owned and controlled by Defendant Menu Foods Income Fund.   Menu Foods South Dakota, Inc. can be served at 630 North Derby Lane, North Sioux City, SD 57049.

17.    Defendant Menu Foods Holdings, Inc. is a Delaware corporation that can be served at P.O. Box 1046, 1400 East Logan Ave., Emporia, KS 66801. Upon information and belief, Menu Foods Holdings, Inc. is an affiliate or subsidiary of, and wholly owned and controlled by Defendant Menu Foods Income Fund.

18.     Defendant Menu Foods, Inc., is a New Jersey corporation that maintains its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110. Menu Foods, Inc. has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit.

19.     Defendant Menu Foods Limited is a Canadian corporation located at 8 Falconer Drive, Mississauga, Ontario, L5N 1B1, Canada.  Menu Foods Limited has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit.  Upon information and belief, Menu Foods Limited owns the Kansas and New Jersey manufacturing plants that produced the Defective Pet Food Products.

20.     At all times herein mentioned, Defendants were the principals, agents, employees, servants, joint venturers, partners, and representatives of each other. In performing the acts complained of herein, Defendants were each acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendants.

## John Doe Co-Conspirators

21.     Various others, presently unknown to Plaintiffs, participated as co-conspirators with the Defendants in the violations of law alleged in this Complaint, and have engaged in conduct and made statements in furtherance thereof.

22.     The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective

officers, agents, employees or representatives while actively engaged in the management of each Defendants' business or affairs.

23.    Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

**FACTUAL ALLEGATIONS**

**The Menu Foods Defendants and Their Defective Pet Food Products**

24.    The Menu Foods Defendants hold themselves out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.  Defendants are in the business of manufacturing, producing, distributing, and/or selling pet food under various brands or labels, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Save-a-Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Winn Dixie.

25.    The Menu Food Defendants have manufactured or produced pet food for private labels for approximately 17 of the 20 leading retailers in the United States, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains.

26.     The Menu Foods Defendants produce millions of pouches or containers of pet food products each year, a substantial portion of which are sold or offered for sale in New Jersey. Upon information and belief, Defendants have sold, either directly or indirectly, thousands of units of defective pet food and pet food products nationwide and in the state of New Jersey.

27.     The Menu Foods Defendants make numerous express warranties about the quality of its food and their manufacturing facilities.  For example, the Menu Food Defendants claim that they "manufacture the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and operate "state-of-the-art" manufacturing facilities in the United States and Canada.

28.     In conjunction with each sale, the Menu Foods Defendants marketed, advertised and warranted that the Products were fit for the ordinary purpose for which such goods were used — consumption by household pets — and were free from defects.

29.     The Menu Foods Defendants produce the pet food products intending that consumers will purchase the pet food products, regardless of brand or label name, place of purchase, or the location where pets actually consume them. The pet food products were intended to be placed in the stream of commerce and distributed and offered for sale and sold to Plaintiffs and purchasers in New Jersey and the United States and fed to their pets.

30.    The Menu Foods Defendants intended for pet owners to believe its statements and representations about their products, and trust that their pet food is of first-rate quality.

31.    The Menu Foods Defendants manufactured, marketed, advertised, warranted and sold, either directly or through their authorized distribution channels, the Defective Pet Food Products.

**The Defendants' Belated Recalls of the Defective Pet Food Products**

32.    On or about March 16, 2007, the Menu Foods Defendants announced a recall of approximately 42 brands "cuts and gravy" style dog food, and 51 brands of "cuts and gravy" style cat food, all produced at Defendants' facility in Emporia, Kansas, between December 3, 2006, and March 6, 2007.

33.    The Defective Pet Food Products were sold under more than 90 brand names, including popular labels like Iams and Eukanuba.  Retailers who sold the contaminated products include Ahold USA, Krogcr Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

34.    One of the Menu Foods Defendants acknowledges receiving complaints as early as December of 2006 that raised concerns about the safety of their pet food, and its impact on the renal health of pets that had consumed these products. Rather than timely warning the public about the suspected, and later confirmed, dangers of the Defective Pet Food Products, the Menu Foods Defendants delayed announcing the recall to minimize the financial fallout from the contamination. The Menu Foods Defendants had no choice but to issue a recall on March 16 because

Defendants' biggest customer (which accounts for 11% of Defendants' annual revenues) had initiated its own recall of the Menu Foods Defendants' products.

35.    Stephen Sundlof of the Food and Drug Administration said that the Menu Foods Defendants began their own taste tests of its pet food beginning February 27, 2007 in approximately 40 to 50 pets. Within a few days, animals began showing signs of sickness. In early March 2007, 7 animals died. Menu Foods announced its recall weeks later, on March 16.

36.    On April 5, it was reported that the Menu Foods Defendants expanded the scope of its recall to pet food that was made between November 8, 2006 and March 6, 2007.

## The Contaminated Pet Food Sold by the Menu Foods Defendants

37.    On March 23, 2007, New York state health officials reported laboratory tests of the Defective Pet Food Products found high levels of aminopterin -- a rodentcide banned in the United States but commonly used to kill rats in other countries. aminopterin is a deadly poison that is foreign to pet food, does not naturally occur within it and would not be expected by any reasonable person to be present in pet food.

38.    As of March 24, 2007, representatives of the Menu Foods Defendants have stated they did not know how aminopterin got into their Products.  The Menu Foods Defendants nevertheless continue to produce pet food at the two contaminated plants -- despite the New York state health officials' findings of rat poison, despite Defendants' own product testing last month that resulted in as

many as one in six animal deaths, and despite the many dogs and cats who have fallen sick or died.

39.     The Food and Drug Administration ("FDA") reports that it received more than 12,000 complaints from owners of sick and deceased pets, as well as calls from veterinarians and pet food companies.  The Defendants have reportedly received 300,000 calls from consumers.

40.     To date, Defendants have confirmed 16 pet deaths. The Veterinary Information Network reported that more than 100 pets have died.

41.     Prior to the recall, the Menu Foods Defendants never warned Plaintiffs or any other member of the Class that their Defective Pet Food Products would cause their pets to have health problems.

42.     As a result of the Defendants' wrongful actions, Plaintiffs and Class members have sick or deceased pets, and have suffered economic damages, including, but not limited to, the costs of medical treatment for their pets, burial costs, the costs to replace their pets, and the costs to replace or clean personal property damaged as a result of their pets' illnesses, the loss and disability of their household pets, costs of purchasing the Defective Pet Food Products and replacing it with a safe product, including sales tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by the Menu Foods Defendants, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise

43.    In addition, their pets will require continuous medical monitoring to gauge the long‑ term effects of the contaminated pet food on their kidney functions and overall health. Therefore, because the precise impact on the health of class members' pets is not currently known, Plaintiffs and the Class seek the cost of medical monitoring for their pets.

## CLASS ACTION ALLEGATIONS

44.    Plaintiffs bring this suit as a class action on behalf of herself and on behalf of all others similarly situated (the "Class") pursuant to FED. R. CIV. P. 23(b)(2) and/or 23(b)(3).  Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Plaintiffs seek to represent the following class:

> all persons in the United States who purchased any of the Defective Pet Food Products, and have been injured as a result.

45.    This action has been brought and may be properly maintained as a class action for the following reasons:

a.    <u>Numerosity</u>:  Members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains thousands and perhaps tens of thousands of members.  Defendants have recalled 60 million cans of pet food that it sold throughout the United States during the Class Period, and there are reports of thousands of animal deaths and illnesses that have been caused by the Defective Pet Food Products.  The Class is therefore

sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown to Plaintiffs.

      b.    <u>Existence and Predominance of Commons Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

      i.    Whether Defendants acted negligently in failing to prevent the contamination of its pet food;

      ii.    Whether Defendants act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food;

      iii.    Whether Defendants breached express and/or implied warranties relating to the sale of its pet food;

      iv.    Whether Defendants breached any express or implied warranties and/or acted negligently when they manufactured and sold the Defect ice Pet Food;

      v.    the appropriate nature of class-wide equitable relief; and

      vi.    the appropriate measurement of restitution and/or measure of damages to award to Plaintiffs and members of the Class.

These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

c.    Typicality:  Plaintiffs claims are typical of the claims of the Class since Plaintiffs purchased one or more Defective Pet Food Products, as did each member of the Class.  Furthermore, Plaintiffs and all members of the Class sustained monetary injury arising out of Defendants' wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themself and all absent class members.

d.    Adequacy:  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class that they seek to represent; they have retained counsel competent and highly experienced in complex class action litigation; and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

e.    Superiority:  A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

f.       Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

g.       In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## VIOLATIONS ALLEGED

### COUNT I
### CONSUMER FRAUD
### *AGAINST ALL DEFENDANTS*

46.       Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

47.       Plaintiffs and members of the Class are consumers who purchased one or more Defective Pet Food Product, and were injured thereby.

48.       New Jersey and other states throughout the nation have enacted laws to protect consumers against unfair, deceptive or fraudulent business practices, unfair competition and false advertising.[1]  New Jersey and other states throughout the nation provide consumers with a private right of action under these statutes.

49.       In violation of these statutes, Defendants have affirmatively misrepresented and knowingly concealed, suppressed and failed to disclose material facts with the intent that others rely upon such concealment and deception in connection with their sale (and recall) of the Defective Pet Food Products.

_____

[1] New Jersey Consumer Fraud Act is codified at N.J.S.A. §§56.8-1, *et seq.*

50.    The conduct of Defendants, as set forth above, constitutes unfair, fraudulent and/or deceptive trade practices prohibited under the New Jersey Consumer Fraud Act and the consumer fraud acts of various other states.

51.    As a result of Defendants' unfair, fraudulent and/or deceptive trade practices, Plaintiffs and members of the Class have suffered an ascertainable loss of moneys and/or property and/or value.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
*AGAINST ALL DEFENDANTS*

52.    Plaintiffs repeat and incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action

53.    Defendants expressly warranted that the Defective Pet Food Products were, *inter alia*, safe and well accepted for the non-harmful consumption by dogs and cats.

54.    The Defective Pet Food Products do not conform to these express representations because the Defective Pet Food Products are not safe and have high levels of serious, life-threatening side effects.

55.    As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members have been damaged and are therefore entitled to damages.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
*AGAINST ALL DEFENDANTS*

56.     Plaintiffs repeat and incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action

57.     Defendants impliedly warranted that the Defective Pet Food Products were merchantable.

58.     Defendants breached the implied warranty of merchantability, as the Defective Pet Food Products were not merchantable.

59.     As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were damaged and are therefore entitled to damages.

**COUNT IV**
**STRICT PRODUCT LIABILITY**
*AGAINST ALL DEFENDANTS*

60.     Plaintiffs repeat and incorporate by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

61.     Defendants manufactured, marketed, distributed, and supplied the Defective Pet Food Products throughout the United States.  As such, Defendants had a duty to warn the public, including Plaintiffs, of the health risks and possible death associated with using Defendants' Product.

62.     The Defective Pet Food Products were under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

63.     The Defective Pet Food Products were defective in design and/or formulation in that, when the products left the hands of the Defendants, the foreseeable risks exceeded the benefits associated with the design or formulation.

64.     The Defective Pet Food Products were expected to and did reach the Plaintiffs without substantial change in condition.

65.     As a direct and proximate result of the defective and unreasonably dangerous condition of the product, Plaintiffs and Class members suffered damages.

66.     Defendants owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

67.     Defendants breached this duty by failing to exercise due care in the producing, processing, manufacturing and offering for sale of the contaminated pet food described herein.

68.     Defendants further breached this duty by failing timely and effectively to warn Plaintiffs and the Class of the contamination even after it had actual knowledge of that fact and of the resulting risks.

69.     As a proximate cause thereof, Plaintiffs and the Class suffered actual damages, including without limitation the cost of the contaminated pet food.

**COUNT V**
**UNJUST ENRICHMENT**
***AGAINST ALL DEFENDANTS***

70.     Plaintiffs repeat and incorporate by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

71.     Plaintiffs and Class members purchased pet food produced by the Defendants based on the understanding that the food was safe for their pets to consume.

72.     Defendants were and continue to be unjustly enriched at the expense of Plaintiffs and Class members.

73.     Defendants should be required to disgorge this unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray, on behalf of themselves and members of the Class, that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue order certifying the Class as defined above;

B.     award all actual, general, special, incidental, statutory, and punitive consequential damages to which Plaintiffs and Class members are entitled;

C.     award prejudgment and post-judgment interest on such monetary relief;

D.     grant appropriate injunctive and/or declaratory relief;

E.     issue relief for appropriate medical monitoring;

F.     award reasonable attorney's fees and costs; and

G.     grant such further and other relief that this Court deems appropriate.

DATED:  April 10, 2007

Respectfully submitted,

/s/ William J. Pinilis
KAPLAN FOX & KILSHEIMER LLP
William J. Pinilis
237 South Street
Morristown, NJ  07962
Tel:   (973) 656-0222
Fax:   (973) 401-1114

CHIMICLES & TIKELLIS LLP
Kimberly M. Donaldson
Joseph G. Sauder
Benjamin F. Johns
361 West Lancaster Avenue
Haverford, PA 19041
Tel:   610-642-8500
Fax:   610-649-3633

KAPLAN FOX & KILSHEIMER LLP
Robert Kaplan
Linda Nussbaum
Christine M. Fox
805 Third Avenue, 22nd Floor
New York, NY  10022
Tel:   (212) 687-1980
Fax:   (212) 687-7714

KAPLAN FOX & KILSHEIMER LLP
Laurence D. King
555 Montgomery Street, Suite 1501
San Francisco, CA  94111
Tel:   (415) 772-4700
Fax:   (415) 772-4707

Reginald A. Krasney
717 Constitution Drive, Suite 100
Exton, Pennsylvania 19341
Tel:   610-458-3220
Fax:   610-458-3225